Eastern District of Kentucky
F I L E D
JAN 2 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-639-GWU

MARY PARROTT,                           PLAINTIFF,

VS:            MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,      DEFENDANT,

### INTRODUCTION

Mary Parrott originally brought Parrott v. Barnhart, London Civ. A. No. 01-544-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment dated November 18, 1999 (Tr. 164-174), it is again before the Court on cross-motions for summary judgment. This action has also been consolidated with the appeal of a subsequently filed SSI application.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

    1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

    2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

    3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability

1

to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

2

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to

3

properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b),

4

416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Parrott, a 48 year-old former fast food worker, sales clerk/cashier, and stocking clerk with a high school education, suffered from impairments related to degenerative disease, osteoarthritis, and anxiety/depression.[1] (Tr. 452, 459). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 459). Since the available work was found to constitute a

---

[1] The Appeals Council did assume jurisdiction in this action (Tr. 444) making its December 7, 2004 denial decision the final decision of the Commissioner. (Tr. 434). However, this was done in order to address the ALJ's failure to specify that the DIB claim had been considered and the Appeals Council adopted all of the ALJ's findings and conclusions. (Tr. 437-438).

5

significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 460). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 458-459).

The procedural history of Parrott's claims is important. The plaintiff filed her first application for DIB on August 29, 1994. (Tr. 33-35). This application was denied at all administrative levels and became final in a decision dated September 23, 1995.[2] (Tr. 12-19). In February of 1998, the claimant filed her current applications for DIB (Tr. 240-242) and for SSI (Tr. 404-407) which are the subjects of this action. These applications were denied in an administrative decision dated November 18, 1999. (Tr. 164-174). The plaintiff appealed to federal district court and the undersigned reversed and remanded the case for further consideration presumably in a decision dated December 6, 2002. (Tr. 819-828). While this appeal was pending in federal court, the claimant filed another application for SSI on April 3, 2000. (Tr. 595-599). This action was denied in an administrative decision which became final as of July 26, 2002. (Tr. 755-765). This action was also appealed to federal district court and the undersigned granted a motion by the defendant to reverse and remand it to the Commissioner on February 12, 2003. (Tr. 831). Upon remand, the appeal of this application was consolidated with the applications of February, 1998. (Tr. 452). Therefore, the appeal of all of these applications is now before the undersigned.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the

---

[2]The plaintiff appealed this denial decision to federal court and the undersigned affirmed it on January 23, 1998. (Tr. 209-219).

6

plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included an exertional limitation to light level work restricted from a full range by such non-exertional limitations as (1) inability to more than frequently bend or reach above shoulder level; (2) an inability to more than occasionally squat, crawl, or climb; (3) a "limited but satisfactory" ability to behave in an emotionally stable manner, deal with work stresses, and carry out complex instructions; and (4) a "more than satisfactory" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, maintain attention or concentration, demonstrate reliability, relate predictably in social situations, maintain personal appearance, and carry out simple or detailed instructions. (Tr. 535-536). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 536). The ALJ then inquired about the effect of an inability to read or spell above the fifth grade level and perform arithmetic above the fourth grade level. (Tr. 536). The witness indicated that the available job numbers would be reduced but again noted a significant number of available jobs. (Tr. 536-537). The ALJ then added a sit/stand option in intervals of 30 to 45 minutes at a time. (Tr. 538). Bradford again stated that, while the available job base would be reduced, a significant number would remain available. (Tr. 538). Therefore, assuming that the vocational factors considered by the expert fairly characterized Parrott's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The Court's December, 2002 remand of this action occurred because the ALJ erred in evaluating Parrott's mental status. Every mental health professional of record who addressed the issue of mental limitations suggested the existence

7

of more severe mental limitations than those presented in the hypothetical question. (Tr. 825-826). Upon remand, this problem has been cured.

The mental restrictions presented to Bradford were compatible with the opinion of Psychologist William Rigby, an examining consultant who opined that Parrott would have a "limited but satisfactory" ability to deal with work stresses and understand, remember and carry out complex instructions. (Tr. 744-745). Psychologist Neil Lewis testified at the administrative hearing that the plaintiff he believed that the plaintiff would also have a "limited but satisfactory" ability to behave in an emotionally stable manner, a restriction also presented to Bradford. (Tr. 529). Psychologists Jane Brake (Tr. 685) and Thompson Prout[3] (Tr. 695) reviewed the record during the processing of the April, 2000 SSI application and neither thought it revealed the existence of a "severe" mental impairment. Thus, the administrative decision was also consistent with these opinions. To the extent that the opinions of examiners Shelle Dietrich (Tr. 120) and Dr. Kevin Eggerman (Tr. 303, 654) as well as Medical Reviewer Edward Stodola (Tr. 379-380) might be construed to indicate the existence of more severe mental limitations, they are offset by the aforementioned medical reports. Therefore, these opinions provide substantial evidence to support the administrative decision.

Dr. Jose Echeverria, a treating source at Appalachian Regional Healthcare, identified a number of very severe mental limitations on an October, 1999 assessment form. (Tr. 400-401). In the December, 2002 decision, the undersigned noted that while these restrictions were not properly offset in the

---

[3] Prout had also reviewed the record December of 1998 at which time he identified the existence of a number of mental limitations. (Tr. 373-374). These were offset by the aforementioned reports.

8

record, they were not binding on the ALJ because the physician's treatment notes did not suggest the existence of a mental problem of such severity. (Tr. 826-827). Upon remand, the plaintiff has presented no new evidence which contradicts this finding and it has not been disputed in her current arguments to the Court. Therefore, the ALJ properly rejected Dr. Echeverria's mental limitations.

The physical factors of the hypothetical question were also supported by substantial evidence. The question was fully compatible with the limitations indicated by Dr. David Hiestand, an examining consultant. (Tr. 849). Dr. Andrew Morfesis, a treating physician at Appalachian, declined to sign a disability form for the plaintiff to obtain food stamps, suggesting that he did not believe she was disabled. (Tr. 324). Dr. John Rawlings[4] (Tr. 706) and Dr. Parandhamulu Saranga (Tr. 707), reviewed the record during the processing of the April, 2000 SSI claim and opined that the claimant did not even suffer from a "severe" physical impairment. These opinions provide substantial evidence to support the administrative decision.

Parrott's sole argument concerns the ALJ's treatment of the report of Dr. Hughes Helm, an examining consultant. Dr. Helms saw the plaintiff in March of 2002, as part of the processing of the April, 2000 SSI application. (Tr. 729-736). The doctor identified a number of restrictions which the claimant asserts were favorable to her disability claim. (Tr. 735). The ALJ rejected this opinion because Dr. Helms was not properly licensed in Kentucky at the time of the examination (Tr. 455) and, so, was not an "acceptable medical source" under the

---

[4]Dr. Rawlings also had reviewed the record in December of 1998 at which time he did believe the plaintiff to suffer from some physical restrictions. (Tr. 353-362). These were offset by the aforementioned medical evidence.

9

administrative regulations at 20 C.F.R. Section 404.1513. Instead, the ALJ relied upon the opinion of Dr. Hiestand, whose consultative examination had been obtained following the two remands of this action to the Commissioner. (Tr. 455). At the administrative hearing held on December 3, 2003, the plaintiff objected to the admission of Dr. Hiestand's report on the grounds that it was agency policy, with regard to Dr. Helms' licensing problem, to order new consultative examinations when his reports were favorable to a claimant but not to refer them for a new examination when the report was unfavorable to the claim. (Tr. 493). Parrott asserts that her due process rights were violated by the administration because of this policy and because the ALJ did not address this objection in the text of his denial decision.

The Court must reject Parrott's argument for several reasons. While the ALJ did not address the objection the text of this denial decision, he <u>did</u> overrule it at the administrative hearing after an extensive discussion of it with the claimant's representative. (Tr. 497). Furthermore, in discussing the claimant's objection during this hearing, the ALJ denied the existence of any such policy on the part of the administration-"there is no office or agency policy in that regard." (Tr. 494). Thus, the claimant has the burden of proving the existence of such a policy.

While Parrott's representative claimed at the hearing to have reviewed dozens of files in which a new report was obtained when an favorable opinion of an unlicensed physician was issued and no new report was sought when it was unfavorable (Tr. 494), she has submitted only two cases to the undersigned as examples of this alleged policy. In <u>Davis v. Barnhart</u>, London Civ. A. No. 04-40-GWU, the undersigned reversed and remanded the action because Dr. Helm's opinion, issued when he appears to have been licensed, was not properly offset

10

in the record by the opinion of another treating, examining or reviewing source. An earlier examination by Dr. Helm when he was clearly not licensed was not considered by the ALJ and played no part in the Court's decision to reverse and remand the action. Thus, this case does not support the plaintiff's claim. In Creech v. Barnhart, London Civ. A. No. 03-317-GWU, the claimant sought a remand of the case pursuant to sentence six of 42 U.S.C. Section 405(g) based upon new evidence indicating that Dr. Helm had not been licensed in Kentucky at the time of the examination upon which the ALJ relied. This was opposed by the administration on the ground that this new information was not "material." The reasoning behind the administration's assertion is not outlined in the decision and one single case does not make for a policy. Therefore, Parrott's cited cases do not prove her claim.

Furthermore, the undersigned has also reviewed hundreds of Social Security disability cases over the years and notes that if not an outright policy, it at least appears to be a common administrative practice to obtain new consultative examinations following the remand of a case to the Commissioner by the Court. Reynolds v. Halter, Pikeville Civ. A. No. 00-157 and Rouse v. Barnhart, London Civ. A. No. 01-39-GWU are just two recent examples of this practice. As previously noted, Dr. Helm saw the plaintiff as part of the processing of the April, 2000 SSI claim which was reversed and remanded by this Court and consolidated with the February, 1998 applications which had also been reversed and remanded by the undersigned. In this very action, the ALJ sought a new mental health examination from Rigby to replace the two prior reports of the properly-licensed Dr. Eggerman, both of which had been more favorable to the plaintiff's claim than that of Rigby. Therefore, common administrative practice made it likely that the ALJ would have sought a

11

consultative physical examination even if Dr. Helm had been properly-licensed and the undersigned sees no violation of Parrott's due process rights in this action since the ALJ was following a long-established administrative practice.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 20 day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE